UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MELISSA A. CHICK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>　　　　　Defendant. | CASE NO. 3:16-CV-05967-JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed. *See* Dkt. 14, 15, 16.

At issue in this case is plaintiff's abilities regarding sustained sitting, standing, and walking. In September, 2013, an MRI of plaintiff's lumbar spine revealed "a large left

herniated disc at L5-S1 with severe central canal stenosis and disc protrusions at L3-L4 and L4-L5." AR. 28 (citation omitted). In October, 2013, plaintiff underwent surgery on her lower back, consisting of a laminectomy. *See id.* As acknowledged by the ALJ, consistent with plaintiff's allegations, "post-operative MRI images in February, 2014 and January, 2015 showed, among other things, that the herniated disc at L5-S1 appeared larger than it did preoperatively, and [plaintiff] still had severe central canal stenosis and other disc protrusions in her lumbar spine." *Id*. (citations omitted).

The ALJ rejected plaintiff's allegations of limitations in sustained sitting, standing and walking based, in part, on a finding of inconsistency with plaintiff's activities of daily living. However, the activities of daily living noted by the ALJ, such as performing light household chores, watching television, going shopping in stores, and using the computer, are not inconsistent with plaintiff's allegations of limitations in sustained sitting, standing and walking. Furthermore, while appearing to rely heavily on plaintiff's dramatic presentation, the ALJ failed to acknowledge significant probative evidence regarding observations of plaintiff's treating physician and examination findings such as positive left straight leg raising, absent left ankle jerk and inability to sit still.

Therefore, the Court concludes that this matter requires further administrative development and is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order. Following remand of this matter, the ALJ should be sure to evaluate functional assessments from plaintiff's treating providers with respect to the period of time both before and after her 2013 surgery.

BACKGROUND

Plaintiff, MELISSA A. CHICK, was born in 1978 and was 32 years old on the alleged date of disability onset of February 15, 2011. *See* AR. 259-60, 261-69. Plaintiff has at least a 12th grade education.  AR. 49.

According to the ALJ, plaintiff has at least the severe impairments of "lumbar stenosis and herniation, status post laminectomy; neck strain, status post C-6 fracture; polysubstance abuse; post-traumatic stress disorder (PTSD); anxiety disorder; and depressive disorder (20 CFR 404.1520(c) and 416.920(c))." AR. 22.

At the time of the hearing, plaintiff was living with her parents in their home.  AR. 48-49.

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 20. Plaintiff's requested hearing was held before Administrative Law Judge Joanne E. Dantonio ("the ALJ") on November 19, 2014. *See* AR. 41-106. On April 28, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 17-40.

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Did the ALJ err by rejecting all of the opinions about plaintiff's ability to perform the sitting and standing required for sedentary work, and then substituting her opinion for that of a

doctor and formulating a RFC which lacks the support of physicians or other experts; and (2) Did the ALJ err by failing to develop the record when she rejected all of the medical opinions in evidence about plaintiff's back impairments. *See* Dkt. 14, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Did the ALJ err by rejecting all of the opinions about plaintiff's ability to perform the sitting and standing required for sedentary work, and then substituting her opinion for that of a doctor and formulating a RFC which lacks the support of physicians or other experts?**

Plaintiff contends that "the ALJ ignored the nature of plaintiff's back impairment," citing medical literature indicating that cervical or lumbar radiculopathy may result in the inability to sit for prolonged periods of time. *See* Dkt. 14, p. 6 (citations omitted). Among other arguments, plaintiff indicates that the "assignments of error in this case pertain to plaintiff's abilities to perform the sitting, standing and walking for sedentary work." Dkt. 16, p. 3. Plaintiff contends that "the ALJ ignored the opinion of treating Dr. Geere that plaintiff is unable to sit still with severe back and leg pain," and failed to note objective findings in support of plaintiff's limitations with respect to sitting, standing, and walking, including plaintiff's limited left straight leg raising and absent left ankle jerk. Dkt. 14, pp.

5, 10 (citing AR. 636). Defendant responds that ALJs are not required to discuss every functional limitation within a medical opinion and provide rationale for failing to reject such limitation, further noting that even if the ALJ must consider the evidence, she does not necessarily need to mention it in her decision. Dkt. 15, p. 5.

The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571. For example, "an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them." *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (citing *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014)).

Here, although the ALJ in her decision did not totally ignore the notes from treating physician Dr. Geere, the ALJ did fail to mention aspects of Dr. Geere's opinion pertaining to plaintiff's physical impairments, including observations and limitations that support the doctor's opinion. *See* AR. 31-32. Dr. Linda Geere, M.D., plaintiff's treating physician since December, 2012, indicated that her opinion regarding plaintiff's limitations was based on plaintiff's interactions with the staff, as well as plaintiff's inability to sit still. *See* AR. 636. She also indicated that her assessment was supported by plaintiff's limited left straight leg raising, absent left ankle jerk and extreme fidgeting, in addition to plaintiff's anxiety. *See id*.

When failing to credit fully the treating physician's opinion, the ALJ did not mention the treating physician's opinion regarding plaintiff's inability to sit still, or that her assessment was supported by plaintiff's limited left straight leg raising, absent left ankle jerk and extreme fidgeting. *See* AR. 31-32. Defendant contends that the ALJ did not need to reference these observations of the treating physician because they were not significant probative evidence that needed to be discussed, because the observations of difficulties with left straight leg raising, absent left ankle jerk and extreme fidgeting, and the physician's opinion that plaintiff cannot sit still "were not sufficiently probative to merit discussion in the ALJ's decision." Dkt. 15, p. 6.

Defendant appears to imply that these observations and opinion from the treating physician are not sufficiently probative because they are listed in a mental questionnaire form. *See id*. Although it is true that context is relevant when determining whether or not particular evidence is significant and probative, this determination must be made in the context of the decision and the record as a whole. The context here concludes the ALJ's rejection of the opinion of the occupational therapist that plaintiff suffered from a "decreased tolerance for sustained sitting, standing or walking." *See* AR. 921. The occupational therapist performed extensive testing of plaintiff's abilities, noting that plaintiff "did not demonstrate the ability to perform work activities for more than two hours in an eight hour day." *See* AR. 919-21.

The ALJ completely rejected the opinions of the occupational therapist, Julie Milasich, OTR/L, CHT, in large part based on plaintiff's use of hyperbole when discussing her pain. *See* AR. 30 (*e.g.*, noting that plaintiff reported "constant" and

"terrible" pain, and being "in agony"). In doing so, the ALJ relied on purported inconsistencies in plaintiff's presentation that are not supported by substantial evidence in the record as a whole. For example, the ALJ indicates that "Ms. Milasich herself noted that the claimant's performance [on] the Jamar dynamometer grip test indicated 'less than full effort,'" but fails to recognize that Ms. Milasich indicated that although no "bell-shape curve was seen, indicating less than full effort, [] a less than stable sitting posture (due to pain) may have affected client's performance." AR. 30, 920; *see also* AR. 30, 906 (the ALJ noted that plaintiff "reported that she can exercise without pain," when plaintiff actually indicated "that sometimes she can exercise without pain, but has not exercised in a week").

When failing to credit fully the opinions of the occupational therapist, the ALJ also relied on plaintiff's daily living activities. *See* AR. 30. However, Ms. Milasich opined that plaintiff suffered from "decreased tolerance for sustained sitting, standing or walking," and the activities of daily living noted by the ALJ, such as performing light household chores, preparing simple meals, watching television, going shopping in stores, and regularly using the computer, easily can be performed intermittently with breaks, and do not require sustained sitting, standing or walking. *See* AR. 29. Therefore, the ALJ's finding of an inconsistency is not based on substantial evidence in the record as a whole. The opinions of Ms. Milasich, and her detailed evaluation of plaintiff, should be evaluated further following remand of this matter.

Importantly, when rejecting the opinions of Ms. Milasich, the ALJ implies that Ms. Milasich relied heavily on plaintiff's subjective reporting. However, the ALJ engages

in little discussion of Ms. Milasich's extensive testing of plaintiff, including testing of plaintiff's range of motion, muscle strength, grip strength, lifting ability, carrying ability, pushing/pulling ability, and positional testing. *See* AR. 30, 919-21. Although a key issue in this case is plaintiff's ability to sit, stand, or walk, and to sustain these positions, the ALJ did not note relevant observations of Ms. Milasich such as that during "the intake interview, [plaintiff] consistently sat with minimal to no weight through her left hip [and] sat for approximately 10 minutes at a time, and alternated several times between sitting and standing or shifted positions while sitting;" and that plaintiff stood during the evaluation "for approximately five minutes, with frequent shifts and posture, and using her upper extremities for weight-bearing." AR. 920-21; *see also* AR. 30.

In light of the ALJ's failure to discuss Ms. Milasich's observations, the additional failure by the ALJ to mention the substantiation of Ms. Milasich's opinions and observations provided by plaintiff's treating physician is problematic and suggests that the record needs more development. For the reasons stated and based on the record as a whole, the Court concludes that the ALJ erred by failing to discuss significant probative evidence. *See Flores, supra*, 49 F.3d at 571.  This finding is buttressed by the observations of plaintiff's primary care doctor following her surgery that plaintiff's "very large L5-S1 left-sided disc herniation causing severe lateral recess stenosis [] appears even larger than her preoperative disc," and presented as "an acute herniation on the MRI." AR. 882.

Like the observations of Dr. Geere, plaintiff's treating physician, Dr. Tarun Tandon, M.D., who saw plaintiff based on a referral from her primary care physician,

ORDER ON PLAINTIFF'S COMPLAINT - 8

similarly observed positive straight leg raise on the left with dermatome distribution in the lower leg and an absent ankle reflex on the left. *See* AR. 933. He also observed plaintiff's antalgic gate favoring her left leg, and her abnormal sensation to touch and pinprick, reduced in the left L4, and increased in the S1 distribution. *See id*. Dr. Tandon assessed plaintiff with post laminectomy syndrome, with recurrent L5-S1 herniated disc, among other impairments. *See id*. Dr. Tandon's observations are substantially similar to the observations from plaintiff's treating physician that were not noted by the ALJ and demonstrate that the observations from plaintiff's treating physician are significant probative evidence that need to be addressed by the ALJ. These additional medical records also demonstrate that further evaluation of plaintiff's physical impairments is required.

The Court also concludes that the error by the ALJ in failing to discuss significant probative evidence is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In

*Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, the ALJ failed to take note of the observations of plaintiff's treating physician regarding plaintiff's physical impairments, including examination findings of positive left straight leg raise, absent ankle reflex, extreme fidgeting and inability to sit. Fully crediting these observations likely would result in increased weight being given by a reasonable ALJ to the opinion by occupational therapist, Ms. Milasich, that plaintiff suffered from decreased tolerance for sustained sitting, standing or walking. This would affect plaintiff's residual functional capacity ("RFC") and could lead to a finding of disability. Therefore, the Court cannot conclude with confidence "'that no reasonable ALJ, when fully crediting the [ignored evidence], could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56).

(2) **Did the ALJ err by failing to develop the record when she rejected all of the medical opinions in evidence about plaintiff's back impairments?**

The Court already has concluded that the ALJ erred when evaluating the medical evidence, specifically as it relates to plaintiff's sitting, standing and walking abilities, as well as her back impairments *see supra*, section 1. All of the significant probative evidence in the record should be discussed by the ALJ following remand of this matter. The ALJ should take care to assess, or acquire if necessary, specific functional

assessments from plaintiff's treating providers regarding the period of time both before and after her 2013 surgery.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 25th day of July, 2017.

J. Richard Creatura
United States Magistrate Judge